**In re Stephen Michael HASTINGS, Lisa Karen Hastings, Debtors.**

**Michael L. Baker, Trustee, Plaintiff,**

v.

**The CIT Group/Consumer Finance Inc.; United States of America, Internal Revenue Service; Mike Hastings and Sylvia Hastings, Defendants.**

**Bankruptcy No. 05–24546. Adversary No. 06–2059.**

United States Bankruptcy Court, E.D. Kentucky, Covington Division.

Oct. 30, 2006.

Debra S. Pleatman, Covington, KY, for Trustee/Plaintiff.

Adam R. Kegley, Lexington, KY, for defendant The CIT Group/Consumer Finance, Inc.

Charles H. Keen, Washington, DC, for defendant Internal Revenue Service.

## MEMORANDUM OPINION

WILLIAM S. HOWARD, Bankruptcy Judge.

This matter is before the court on cross-Motions for Summary Judgment by Defendant The CIT Group/Consumer Finance, Inc. ("CIT") and the Plaintiff Trustee. This is another in a line of cases in which the Trustee challenges the validity of a mortgage based on an allegedly defective acknowledgment. The issues before the court are whether the mortgage was properly acknowledged, and, even if it was not, whether KRS 382.270 may be retroactively applied to defeat the Trustee. The third issue, raised in the Trustee's Motion for Summary Judgment, is whether the interest of the Internal Revenue Service ("IRS") in the subject property is subordinate to that of the Trustee. This court has jurisdiction of this matter pursuant to Judicial Code section 1334(b); it is a core proceeding pursuant to Judicial Code section 157(b)(2)(K).

### 1. *Factual and procedural background*

On February 11, 2002, the Debtors executed and delivered a promissory note in the principal amount of $68,000 and a mortgage on real property located in Pen-dleton County, Kentucky ("the Mortgage"). The Mortgage was lodged for record on February 21, 2002, and recorded in the Pendleton County Clerk's office. The notary's certificate of acknowledgment reveals that the Mortgage was acknowledged in Hamilton County, Ohio; the certificate does not identify the Debtors as the mortgagors.

On October 12, 2005, the IRS recorded a Notice of Federal Tax Lien in regard to Debtor Stephen Michael Hastings. The amount of indebtedness asserted against him is $59,382.95. The Debtors filed their Chapter 7 case in this court on October 14, 2005. The Trustee commenced this proceeding by filing his Complaint on March 17, 2006, seeking to avoid the Mortgage and liquidate the property for the benefit of the estate. Both Motions for Summary Judgment were filed on August 2, 2006, and the matter was heard on August 30, 2006 and taken under submission. An Order of Submission was entered on August 31, 2006.

### 2. *Discussion*

#### a. *The Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, provides that summary judgment is appropriate and "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has observed that

this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no genuine issue of *material* fact.

As to materiality, the substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)(emphasis in original).

The summary judgment standard is set out in *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

The Sixth Circuit has opined that "[r]ead together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

b. *Whether the Mortgage was properly acknowledged*

■ CIT contends that the Mortgage was properly acknowledged under Kentucky law pursuant to KRS 423.110 and KRS 423.140. KRS 423.110 provides in pertinent part as follows:

> For the purposes of KRS 423.100 to 423.190, 'notarial acts' means acts which the laws and regulations of this state authorize notaries public of this state to perform, including the administering of oaths and affirmations, taking proof of execution and acknowledgments of instruments, and attesting documents. Notarial acts may be performed outside this state for use in this state with the same effect as if performed by a notary public of this state by the following persons authorized pursuant to the laws and regulations of other governments in addition to any person authorized by the laws and regulations of this state:
>
> (1) A notary public authorized to perform notarial acts in the place in which the act is performed; . . . .

KRS 423.110(1). KRS 423.140 provides:

> The form of a certificate of acknowledgment used by a person whose authority is recognized under KRS 423.110 shall be accepted in this state if:
>
> (1) The certificate is in a form prescribed by the laws or regulations of this state;
>
> (2) The certificate is in a form prescribed by the laws or regulations applicable in the place in which the acknowledgment is taken; or
>
> (3) The certificate contains the words 'acknowledged before me,' or their substantial equivalent.

KRS 423.140. CIT takes the position that the words "acknowledged before me" in subsection (3) render the certificate of acknowledgment valid, even though the certificate does not identify the Debtors. Likewise, subsection (3) does not recite a requirement that the notary sign his or her name to the acknowledgment, but we do not believe the Legislature intended to validate acknowledgments which are not signed by the notary. This provision is

not a stand-alone indicia of validity. It is intended to be taken in the context of all the regular requirements for a valid certificate of acknowledgment. Use of the words "acknowledged before me" is therefore insufficient in the absence of the elements set out in KRS 423.130 which sets out the requirements for a proper acknowledgment clause:

> The person taking an acknowledgment shall certify that:
>
> (1) The person acknowledging appeared before him and acknowledged he executed the instrument; and
>
> (2) The person acknowledging was known to the person taking the acknowledgment or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.

KRS 423.130.

■ The issue of what is required for a valid certificate of acknowledgment has been addressed by the Sixth Circuit Court of Appeals in *Rogan v. America's Wholesale Lender (In re Vance),* 99 Fed.Appx. 25, 27–28 (6th Cir.2004). There the mortgage under consideration failed to include the information required by KRS 423.130 in the notary's certificate, and the notarial acknowledgment was found to be defective. The defective acknowledgment made the attempted conveyance invalid as against a bona fide purchaser for value ("BFP") pursuant to KRS 382.270. The trustee, standing in the position of a BFP pursuant to Bankruptcy Code section 544(a)(3), could therefore avoid the mortgage. *Id.* The mortgage at issue here is defective under the *Vance* standard as the certificate of acknowledgment does not identify the Debtors as the persons who acknowledged the mortgage.

c. *Whether amended KRS 382.270 prevents the Trustee from avoiding the Mortgage*

■ CIT argues in the alternative, however, that even if the certificate of acknowledgment is defective, the Trustee may not avoid the Mortgage pursuant to KRS 382.270, as recently amended. That statute now provides:

> No deed or deed of trust or mortgage conveying a legal or equitable title to real property shall be lodged for record and, thus, valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed or mortgage is acknowledged or proved according to law. However, if a deed or deed of trust or mortgage conveying a legal or equitable title to real property is not so acknowledged or proved according to law, but is or has been, prior to the effective date of this Act, otherwise lodged for record, such deed or deed of trust or mortgage conveying a legal or equitable title to real property or creating a mortgage lien on real property shall be deemed to be validly lodged for record for purposes of KRS Chapter 382, and all interested parties shall be on constructive notice of the contents thereof. As used in this section 'creditors' includes all creditors irrespective of whether or not they have acquired a lien by legal or equitable proceedings or by voluntary conveyance.

KRS 382.270, as amended. The amendment became effective on July 12, 2006. CIT contends that amended KRS 382.270 applies to mortgages lodged for record prior to its effective date, and further that it is remedial legislation and should therefore be applied retroactively to the Mortgage. As set out above, the Mortgage was recorded before the amendment became effective. Further, the Trustee's rights as a BFP became fixed on the date of filing of

the debtor's petition which was before the amendment became effective. *In re Colon*, 345 B.R. 723, 726 (Bankr.D.Kan.2005) ("The strong arm powers of the Trustee under § 544(a) are fixed as of the commencement of the case.")

■ Retroactive application of legislation is governed by KRS 446.080(3) which states: "No statute shall be construed to be retroactive, unless expressly so declared." KRS 446.080(3). In *Hamilton v. Desparado Fuels, Inc.*, 868 S.W.2d 95, Ky. (1993), the court stated in regard to this statute:

> ... KRS 446.080(3) provides that no statute is to be applied retroactively absent an express legislative directive. In *Peach v. 21 Brands Distillery*, Ky.App., 580 S.W.2d 235 (1979), the court emphasized that the rule against the retroactive application of statutes should be strictly construed. Particularly where a statute creates new rights or duties, it should be presumed that the legislature intended for the statute's application to be prospective only.

*Id.* at 97. The Defendants rely on *Eckles v. Wood*, 143 Ky. 451, 136 S.W. 907, Ky. (1907) as authority for their contention that retroactive application of amended KRS 382.270 is proper. The *Eckles* case did not deal with retroactivity in the context of KRS 446.080 (or its predecessor) since that statute was not enacted until 1942. The *Eckles* court discussed the retroactive application of a statute in terms of whether it violated ex post facto laws, impaired contracts, or was an unconstitutional taking of property. Interestingly, the court states: "The retroaction of the statute may be also unconstitutional constructively, if it divest vested rights." *Id.* at 908.

CIT cites *Kentucky Ins. Guar. Ass'n v. Jeffers*, 13 S.W.3d 606, Ky. (2000) for the proposition that a statute may be applied retroactively as long as it is remedial in nature. In *Jeffers*, the court was considering an amendment to the Insurance Guaranty Association Act that increased the limits of malpractice insurance coverage. In discussing whether the amendment was remedial and thus applicable retroactively, the court stated:

> When a plaintiff sues a defendant, the plaintiff has no vested right in the defendant being insured or in the amount of the insurance coverage. The insurance coverage is merely a means of providing funds for the judgment. Likewise, when an insurance company becomes insolvent, KIGA provides funds to satisfy a judgment. Thus, the judicial determination of whether a statutory amendment should be applied retroactively involves a two-step inquiry: (1) Is the amendment limited to the furtherance, facilitation, improvement, etc., of an existing remedy; and (2) If so, does it impair a vested right. If the statute in question only serves to facilitate the remedy, and if no vested right is impaired, the amendment in question is then properly applied to preexisting unresolved claims if such application is consistent with the evident purpose of the statutory scheme.

*Id.* at 610.

■ One of the hallmarks of a trustee's status under Bankruptcy Code section 544 is the fixing or vesting of his rights under that section at the time of filing of the debtor's petition. In this instance, the Trustee's status as a BFP under section 544(a)(3) vested on October 14, 2005, well before amended KRS 382.270 was even enacted. Black's Law Dictionary defines a vested right as "a right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent." *Black's Law Dictionary* 1324 (7th ed.1999). In *Dunlap v. Littell*, 200 Ky. 595, 255 S.W. 280 (1923),

the court stated, ". . . statutes are not to be given a retroactive effect even where the Legislature has power to enact them, unless such an intention clearly and unmistakably appears from the statute itself. . . . [S]uch laws are void if they impair the obligation of contracts or vested rights." *Id.* at 283.

While CIT may argue that amended KRS 382.270 is retroactive in that it applies to mortgages filed before its effective date, that retroactivity does not extend to impair or take away rights of a third party (the Trustee) which vested prior to the statute's effective date. CIT contends that the Trustee's right to be treated as a BFP under Code section 544 is determined solely by Kentucky law, and that retroactive application of amended KRS 382.270 is consistent with Kentucky law as stated in *Eckles v. Wood, supra.* This argument, however, does not address the fact that on October 14, 2005 the Trustee as a hypothetical BFP was in a position to perfect the transfer of property from the Debtors, and section 544(a)(3) treats him as though he had perfected such a transfer **at that moment.** While it is state law which determines whether the Trustee may be a BFP, it is federal law which fixes his rights as a BFP as of a date certain, in this case well before amended KRS 382.270 came into existence.

As discussed by the court in *In re McKeag,* 104 B.R. 160 (Bankr.D.Minn. 1989), the Supremacy Clause of the United States Constitution makes federal law "the supreme Law of the Land." U.S. Const. art. vi, cl. 2. The court there was considering whether the Minnesota legislature's enactment of a statutory amendment with professed retroactive effect could be applied to allow the addition of a limitation on the amount a debtor could claim as exempt under state law. Bankruptcy Code section 522(b)(2)(A) provides that a debtor may exempt only property exempt under state law that is applicable on the date of filing of his petition.

In that case, the debtor had filed his petition before the subject amendment took effect. The court stated:

> [S]tate statutes which conflict with federal statutes are subordinate and unenforceable. . . . A state statute is in conflict with a federal statute if the challenged statute stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress. . . . If the statute frustrates or interferes with the full effectiveness of federal law, it is preempted and unenforceable.

> The filing of a bankruptcy petition creates an estate *at the time of filing* which is comprised of all the debtor's legal and equitable interests in property at the time and, to a limited degree spelled out in the Code, to certain interests acquired after filing. As of that date, the trustee in the case obtains certain avoidance powers, preference and fraudulent transfer time tables are established, and postpetition transfers are restricted. As of that date, with some limited exceptions, the rights and remedies of the creditors of the debtor are set, with neither group generally having the right to improve its position. It is the date of filing which sets in stone the legal relations between the debtor and his creditors.

*Id.* at 164–65 (internal quotations and citations omitted). The court found that retroactive application of the amended statute would alter the parties' rights under the state exemption scheme and held the statute to be unenforceable as being in conflict with a federal law which has superior status. *Id.* This court agrees with the *McKeag* court's reasoning, and concludes that retroactive application of amended KRS

382.270 would impair the Trustee's vested rights as a BFP. Amended KRS 382.270 is in conflict with a federal law and therefore unenforceable, and the Trustee may avoid CIT's lien.

#### d. *Treatment of the IRS's lien*

The Trustee has asserted in his Complaint that any amounts that would otherwise be secured by the IRS's lien should be paid to the estate, and the lien treated as an unsecured priority claim pursuant to Bankruptcy Code section 724(b). In his Motion for Summary Judgment the Trustee states that CIT's lien would have been superior to the IRS's tax lien under state law, as the IRS recorded its lien on October 12, 2005, more than three years after CIT recorded its mortgage. CIT's avoided lien is automatically preserved for the benefit of the estate pursuant to Code section 551, and, the Trustee contends, the estate enjoys priority over the IRS's lien up to the amount of CIT's mortgage as provided in Code section 724(b)(1).

The IRS responds that if CIT's lien was never perfected, it could not have been effective against subsequent lienholders such as the IRS and is not senior to the IRS's tax lien. The IRS goes on to assert that there is no perfected lien to preserve for the benefit of the estate. The IRS also states that if the Trustee avoids CIT's mortgage, the federal tax lien would be subordinated to priority claims pursuant to Code section 507(a)(1)-(7) as set out in Code section 724(b)(2), but that the IRS is entitled to payment pursuant to the provisions of section 724 whether the Trustee avoids the mortgage or not.

Courts have consistently held that preservation of a lien avoided under Bankruptcy Code section 544 puts the estate in the shoes of the creditor whose lien is avoided; preservation does not improve the estate's position viz-a-viz other credi-

tors. A later, properly perfected creditor prevails in this instance, and the estate's lien is junior to that later perfected security interest. *See In re Carvell,* 222 B.R. 178 (1st Cir. BAP 1998). The court must therefore agree with the IRS that its lien is superior to that of the estate, and that it is to be paid as a secured creditor from the proceeds of any sale of the subject property.

An order in conformity with this opinion will be entered separately.